UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**CYRUS ROBERT SANDERS, Jr.,** :
      **Petitioner** : **CIVIL NO. 1:CV-04-0845**
       :
**v.** : **(Judge Kane)**
       :
**GEORGE PATRICK, et al.,** :
      **Respondents** :

## MEMORANDUM AND ORDER

**I.   Introduction**

Cyrus Robert Sanders, Jr., an inmate at the State Correctional Institution at Houtzdale, Pennsylvania, commenced this action with a pro se petition for writ of habeas corpus pursuant to the provisions of 28 U.S.C. § 2254. Petitioner claims that the Pennsylvania Board of Probation and Parole ("PBPP") applied amended standards to his reparole application, in contravention of the ex post facto clause of the United States Constitution. Respondents argue, inter alia, that the petition should be dismissed for failure to exhaust state court remedies. Petitioner concedes that he has not exhausted his state court remedies. However, he argues that exhaustion would be futile and should be excused by the court. The parties have briefed the issues, and the matter is ripe for disposition. For the reasons set forth below, the petition will be denied.

**II.   Discussion**

    **A.  Exhaustion of State Court Remedies**

Petitioner filed the present petition pursuant to the provisions of 28 U.S.C. § 2254. Under § 2254 (b)(1), "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—(A) the applicant has exhausted the

remedies available in the courts of the State. . ." (emphasis added). "An applicant shall not be deemed to have exhausted the remedies available in the court of the State, within the meaning of this section, if he has the right under the law of the state to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). It is well-settled that a state prisoner must present his federal constitutional issues to the highest court of the state before he can present the issues through federal habeas corpus. 28 U.S.C. § 2254(b),(c); Rose v. Lundy, 455 U.S. 509, 515-20 (1982); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996). The exhaustion requirement "rests upon the principles of comity and judicial economy [and] provides state courts with an initial opportunity to consider and correct alleged violations of prisoners' rights without disruption from the federal courts." Hankins v. Fulcomer, 941 F.2d 246, 249 (3d Cir. 1991); see also Gibson, 805 F.2d at 138.

Petitioner claims that exhaustion of state court remedies would be futile, citing Finnegan v. Bd. of Prob. & Parole, 838 A.2d 684 (Pa. 2003). However, the Pennsylvania Supreme Court recently overruled Finnegan in Cimaszewski v. Bd. of Prob. & Parole, 868 A.2d 416, 427 (Pa. 2005). In Cimaszewski, the court held mandamus relief is available to Pennsylvania state prisoners who challenge the constitutionality of parole denials based upon a claim of ex post facto violation. Id.; see also DeFoy v. McCullough, 393 F.3d 439, 445 (3d Cir. 2005) (holding mandamus is not available for Pennsylvania state prisoners challenging denial of parole on constitutional grounds other than the ex post facto clause).

Nevertheless, exhaustion is not a jurisdictional requirement, Walker v. Vaughn, 53 F.3d 609, 614 (3d Cir. 1995), and failure to exhaust state court remedies is not an insurmountable bar to consideration of the merits of a habeas petition. Granberry v. Greer, 481 U.S. 129, 131 (1987). An application for writ of habeas corpus may be denied on the merits, notwithstanding a failure to exhaust state court remedies, 28

U.S.C. § 2254(b), and courts may exercise discretion to determine whether comity and federalism will be better served by requiring exhaustion, or by addressing the merits of the petition forthwith. Granberry, 481 U.S. at 131. If, for example, the petition presents an unresolved issue of state law, comity and judicial economy may dictate dismissal for failure to exhaust state court remedies to allow the state courts an opportunity to address the issue. By contrast, if the issue presented by the petition is well-settled, and the Petitioner fails to raise a viable claim, the interests of the state courts, federal courts, Petitioner and Respondents would be best served by disposition of the petition without further state and federal proceedings. Id. at 134-135. The United States Court of Appeals for the Third Circuit has held that district courts reviewing habeas petitions may dismiss plainly meritless unexhausted claims. Evans v. Court of Common Pleas, 959 F.2d 1227, 1230 (3d Cir. 1992). Accordingly, although Petitioner has not exhausted his state court remedies on his ex post facto claim, his petition is meritless, and the petition will be addressed on the merits.

### B. Ex Post Facto Claim

Petitioner correctly notes that the Third Circuit has held that the PBPP's initial interpretation of the 1996 amendments to the Pennsylvania parole statute (61 P.S. § 331.1) violates the ex post facto clause. Mickens-Thomas v. Vaughn, 321 F.3d 374, 393 (3d Cir. 2003). In Mickens-Thomas, the Third Circuit addressed a habeas petition filed by a prisoner whose life sentence had been commuted to a term of years with parole eligibility. The petitioner claimed that application of revised parole standards violated the ex post facto clause, and he was entitled to review under the standards in place at the time of conviction. The Third Circuit concluded that the revised Parole Board policy, "although partly discretionary, is still subject to ex post facto analysis when there are sufficiently discernable criteria to suggest to a reviewing body that

3

the new retroactive policies are being applied against the offender's interest." Id. at 386. "An adverse change in one's prospects for release disadvantages a prisoner just as surely as an upward change in the minimum duration of sentence." Id. at 392. The Third Circuit held that retroactive application of "changes in the parole laws made after conviction" that adversely impacted the likelihood of parole violated the ex post facto clause.

The Third Circuit noted that prior to 1996, the PBPP's internal policies required it to weigh the inmate's rehabilitation and liberty interest with the interest of public safety in parole evaluations.[1] Id. at 378. Specifically, the Third Circuit noted "that the [PBPP's] Manual of Operations and Procedures recognized that '[p]robation and parole services must consider that offenders can change their behavior patterns when desirous, capable, and given the opportunity, help, dignity, and respect they deserve as human beings.' " Id. (emphasis added). In December 1996, the Pennsylvania legislature added new language to the "aspirational introductory provision" of the parole statute, requiring that the "public safety must be considered first and foremost in the [PBPP's] execution of its mission." Id. at 377 (internal quotation omitted). The Third Circuit concluded that the PBPP "mistakenly construed the 1996 statutory change to signify a substantive change in its parole function." Id. at 391.

---

[1]The Third Circuit explained that

> [i]n considering an inmate for parole, the Board must weigh numerous factors relative to the welfare of the client and the safety of the community, including seriousness of the offense; length of the sentence; institutional adjustment (behavior and program adjustment); and assessment of the effect of rehabilitation services while incarcerated. Whether the individual can be safely supervised in the community, personality characteristics, any history of family violence, strength of the parole plan (home and employment), testimony from victims, and opinions of the sentencing judge and prosecuting attorney must also be considered.

Mickens-Thomas, 321 F.3d at 378 (internal quotation omitted).

Notwithstanding this conclusion, the Third Circuit also acknowledged a recent decision of the Pennsylvania Supreme Court, Winklespecht v. Pa. Bd. of Prob. & Parole, 813 A.2d 688 (Pa. 2002), which clarified that the amended § 331.1 did not constitute binding language requiring the PBPP to place the greatest weight on consideration of the public safety. Id. However, the Third Circuit concluded that the Winklespecht decision, "made after the Board's actions on Thomas' parole, came too late to alter the Board's view of the statutory amendment on the outcome of the case." Id. (emphasis in original).

According to Mickens-Thomas, as well as other non-precedential cases subsequently addressed by the Third Circuit, the appropriate remedy for an ex post facto violation in parole review is for the district court to remand the parole applications to the PBPP for re-adjudication applying the pre-1996 law. Mickens-Thomas, 321 F.3d at 393; McLaurin v. Larkins, 2003 WL 22147497 (3d Cir. Sept. 18, 2003); Hallawell v. Gillis, 2003 WL 1919371 *8 (3d Cir. Apr. 23, 2003). However, the class of individuals entitled to such relief is limited. Except for individuals whose parole decisions were made after the adoption of the 1996 changes, and before Winklespecht clarified the fact that the amendment did not change the administration of parole policies, subsequent parole reviews are made with the understanding that the 1996 amendments did not change the analysis used in the parole proceedings.

At issue in the instant case is Petitioner's reparole denial recorded on January 23, 2004, (Doc. 1, Ex. E).[2]  The January 23, 2004 decision was rendered well after the PBPP had the benefit of the

---

[2]Petitioner has been reviewed for reparole and denied on at least two (2) occasions: January 2, 2003, and January 23, 2004. He challenges each of his denials of reparole (Doc. 1, Exs. D and E) on the grounds that they violate the ex post facto clause of the United States Constitution. The remedy available to Petitioner, upon a finding that a denial of parole violated the ex post facto clause, would be a directive that the PBPP hold a new hearing. Thus, the challenge to the first reparole denial is rendered moot by virtue of the fact that a subsequent hearing has been held. Therefore, the latest PBPP decision, recorded

Winklespecht decision, and specified the following reasons for denial of reparole:

       1) The recommendation made by the Department of Corrections.

       2) [Petitioner's] unacceptable compliance with prescribed institutional programs.

       3) [Petitioner's] institutional behavior, including reported misconducts or [Community Corrections Center] failure.

       4) [Petitioner's] interview with the hearing examiner.

(Doc. 1, Ex. E at 1.) In the decision, the PBPP not only stated that the decision was based on an interview with Petitioner and a review of his file, but also noted the specific reasons why Petitioner had been denied parole. These bases are consistent with consideration of institutional adjustment (behavior and program adjustment), personality characteristics, assessment of the effect of rehabilitation services while incarcerated, and whether the individual can be safely supervised in the community. These factors are set forth in the pre-1996 requirements of the Act, Mickens-Thomas, 321 F.3d at 378, and Petitioner has not produced any evidence that the decision was unduly influenced by contemplation of the public safety first and foremost. Thus, the court finds no evidence that the January 23, 2004 parole decision violated the ex post facto clause. The Court concludes that the PBPP, guided by Winklespecht, returned to the pre-1996 standards for review of Petitioner's January 23, 2004 reparole application. Accordingly, the petition will be denied.

## III.   **Conclusion**

Although Petitioner concedes that he had not exhausted his state court remedies, the Court may deny his petition on the merits. A review of the record supports a conclusion that the PBPP has not applied

---

January 23, 2004 (Doc. 1, Ex. E), is the only one ripe for consideration.

inappropriate standards to Petitioner's reparole application in violation of the ex post facto clause. An appropriate Order follows.

**IV.    Order**

**AND NOW**, in accordance with the foregoing memorandum, **IT IS HEREBY ORDERED THAT**:

1. The petition for writ of habeas corpus (Doc. 1) is **DENIED**.

2. The Clerk of Court is directed to close this case.

3. There is no basis for the issuance of a certificate of appealability.

                                      s/ Yvette Kane
                                      YVETTE KANE
Dated: May 3, 2005.                United States District Judge